554 F.2d 868
 14 Fair Empl.Prac.Cas. 1455, 14 Empl. Prac.
Dec. P 7564
SPERRY RAND CORPORATION, Petitioner,
v.
Honorable Earl R. LARSON, United States District Judge for
the District of Minnesota, Respondent,
and
Delores Elliott and Helen Ambrose, and all other persons
similarly situated, Respondents.
 No. 76-1734.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1976.
Decided May 9, 1977.
 
 David S. Doty, Minneapolis, Minn., Richard C. Hotvedt, of Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., and Gerald S. Hartman, Washington, D. C., on brief, for Sperry Rand Corp.
 William Pentelovitch, Minneapolis, Minn., for International Brotherhood of Electrical Workers.
 James T. Hansing, Minneapolis, Minn., made argument for Local Union No. 2047.
 Richard Bland, Minneapolis, Minn., on brief for respondents.
 Before GIBSON, Chief Judge, HEANEY and WEBSTER, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 Sperry Rand Corporation, a defendant in a Title VII action brought by female employees, petitions this Court for a writ of mandamus to compel decertification of class action status previously granted conditionally to plaintiffs by the District Court.[1] The complaint seeks injunctive relief against class-based sex discrimination in employment practices. In addition, back pay and attorneys' fees are demanded. Also named as defendants are Local Union No. 2047 of the International Brotherhood of Electrical Workers, and the International Brotherhood of Electrical Workers, AFL-CIO.[2]
 
 I. Availability of Mandamus
 
 2
 Petitioner did not seek interlocutory review of the class action certification under 28 U.S.C. § 1292(b). Instead, it sought relief by way of the extraordinary writ of mandamus. This was a conscious procedural choice and it severely limits the scope of our review.[3]
 
 
 3
 " The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). As we said in In re Cessna Distributorship Antitrust Litigation, 532 F.2d 64, 68 (8th Cir. 1976):
 
 
 4
 The remedy of mandamus is available only in those circumstances where the district court exceeds "the sphere of its discretionary power." Will v. United States, 389 U.S. 90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305, 315 (1967). See In re Cessna Aircraft Distributorship Antitrust Litigation, supra, 8 Cir., 518 F.2d 213 at 216; Pfizer Inc. v. Lord, 456 F.2d 545, 547-48 (8th Cir. 1972). See also Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc., 455 F.2d 770, 775 (2d Cir. 1972). Mandamus is an extraordinary remedy reserved only for extraordinary situations. Stein v. Collinson, 499 F.2d 91, 95 (8th Cir. 1974); Gialde v. Time, Inc., 480 F.2d 1295, 1302 (8th Cir. 1973).
 
 
 5
 Mandamus may be appropriate to review orders granting class action designation when the issue presented is one of clear usurpation of power by the district court. Thus, in Schmidt v. Fuller Brush Co., 527 F.2d 532 (8th Cir. 1975), we issued the writ where the District Court had granted Rule 23[4] class action certification in an action brought under the Fair Labor Standards Act notwithstanding the special and conflicting "opt in" requirements of that Act. See 29 U.S.C. § 216(b). Mandamus was similarly granted in Pan American World Airways, Inc. v. United States District Court, 523 F.2d 1073 (9th Cir. 1975), and McDonnell Douglas Corp. v. United States District Court, 523 F.2d 1083 (9th Cir. 1975), cert. denied, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), where the district court had ordered that next of kin of passengers killed in airline crashes be notified of other pending litigation against the airlines, thus exceeding its power under any statute, rule or equity power of the court.
 
 
 6
 It is our task to determine whether the action of the District Court in this case so exceeded its discretion as to be a usurpation of power requiring the issuance of the supervisory writ.
 
 II. The Merits
 
 7
 Employment discrimination by definition has been construed as class-wide discrimination and the class action requirements have thus been broadly interpreted by the courts. See Wright v. Stone Container Corp., 524 F.2d 1058 (8th Cir. 1975); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 721 (7th Cir. 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968). This of course does not obviate compliance with the requirements of Rule 23, see Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968), nor will individual claims automatically become class claims without a showing that others in the class were victims of the same or similar employment patterns and practices. See Wright v. Stone Container Corp., supra, 524 F.2d at 1062.
 
 
 8
 The complaint in the present action alleges no claims peculiar to the named plaintiffs, Elliott and Ambrose; instead, it charges that plaintiffs and members of the class "have been and are being deprived of income in the form of wages and of prospective retirement benefits, social security and other benefits due to them as workers, solely because of their sex." The discriminatory employment practices affecting the class which are alleged to have jeopardized jobs and adversely affected opportunities for advancement are set forth in the margin.[5]
 
 
 9
 The main thrust of petitioner's claim to relief by way of mandamus is that the District Court's certification of the class under Rule 23(b)(2), combined with the order of notice to class members similar to that required under Rule 23(b) (3), operated to lock in antagonistic members of the class and at the same time foment litigation. It was this method of proceeding, ordered by the District Court pursuant to Rule 23(d), that petitioner contends was a usurpation of power by the District Court. In order to assess this contention, we must determine (1) whether the class action certification was so plainly inappropriate that it exceeded the court's discretion, and (2) whether the additional notice requirements were, under the circumstances present in this case, clearly outside the discretion of the District Court.
 
 A. Class Action Certification
 
 10
 The factual determinations upon which the District Court found that plaintiffs had satisfied the class action prerequisites of Rule 23(a),[6] even if arguably erroneous, do not warrant resort to supervisory mandamus. The District Court held that the requirements of numerosity, commonality of issues, and typicality had been met. See Fed.R.Civ.P. 23(a). These determinations are well within the trial court's "sphere of its discretionary power." See Will v. United States, 389 U.S. 90, 104, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); In re Cessna Aircraft Distributorship Antitrust Litigation, 518 F.2d 213, 216 (8th Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975). No discussion of these factors is required.
 
 
 11
 A more concerted challenge is made to the District Court's finding that plaintiffs would fairly and adequately represent the class. See Rule 23(a)(4).[7] Our review under a petition for mandamus is limited to a determination of whether the District Court acted outside its discretion or so clearly ignored a compelling showing of inappropriateness that granting class action certification amounted to a denial of due process.
 
 
 12
 No challenge is made to the competency of plaintiffs' counsel. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968). Instead, it is claimed that plaintiffs, as past officers of the union, engaged in activities in and out of office that were not consistent with the interests of other members of the class. Five sources of antagonism were brought to the District Court's attention:
 
 
 13
 1. Intra-union disputes which occurred from 1968-1970 while plaintiffs were union officers;
 
 
 14
 2. Plaintiffs, as former union officers, may be called as witnesses to defend the Local against charges that it is liable for discriminatory practices that occurred during the time they were in office;
 
 
 15
 3. Plaintiffs were suspended from office in 1970 by the International and prohibited from holding office for five years. Since that time they have initiated three different proceedings against the unions, suggesting an ulterior motive for this suit.
 
 
 16
 4. The class itself does not support this suit, as evidenced by a resolution of nonsupport passed 83-0 at a union meeting and by unsolicited petitions in which the signers stated they did not support the action.
 
 
 17
 5. Since plaintiffs' suspension period has ended, they are likely to run for office again and may be using this lawsuit to advance their political ambitions.
 
 
 18
 The District Court gave careful consideration to whether these factors disqualified plaintiffs as fair and adequate representatives of the class, guided by the following principles, which we hold to be correct:
 
 
 19
 (1) the antagonism which will defeat maintenance of a class action must relate to the subject matter in controversy, as when the representative's claim conflicts with the economic interests of the class; (2) disagreements as to the remedy do not necessarily defeat a class action, especially in Title VII cases where the Court has broad powers in fashioning appropriate remedies; (3) the mere existence of political divisions or factionalism within a union does not require class decertification; (4) disagreements as to the wisdom of a union member's suing the union are not a proper basis for decertification; (5) union officers are not necessarily disenabled from suing on behalf of union members when the interests asserted are solely the interests of members and employees; (6) evidence of antagonism based on membership votes should be carefully scrutinized and should be clear and convincing; and (7) while questions of motive are secondary, the Court should be cognizant of the limitations of its supervisory powers and should be sensitive to the possible existence of ulterior motives which might jeopardize the interests of the class.[8]
 
 
 20
 In its carefully considered memorandum opinion, the District Court concluded that the frictions described above did not reach the subject matter of the suit; that plaintiffs' past history as union officers would not preclude a vigorous prosecution of the claims of class-based discrimination; that the evidence of lack of enthusiasm by other union employees was not reliable and in any event was not controlling; and that plaintiffs' private motives would not affect the merits of the case. No usurpation of power can be gleaned from these conclusions, singularly or in the aggregate, and a case for mandamus to review class action certification has not been made out on grounds of antagonism alone.[9]
 
 
 21
 The District Court conditionally certified the class under Rule 23(b)(2). Rule 23 requires that in addition to finding, as here, that the four prerequisites of Rule 23(a)[10] have been met, there must be present one of the three alternative requirements of Rule 23(b). The District Court found that the provisions of subdivision (2) of Rule 23(b) had been satisfied:
 
 
 22
 the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole(.)
 
 
 23
 This provision was incorporated into Rule 23 with the 1966 amendment "primarily to facilitate the bringing of class actions in the civil rights area." 7A C. Wright and A. Miller, Federal Practice and Procedure § 1775, at 24 (1972).
 
 
 24
 Rule 23(b)(2) certification is appropriate when plaintiffs seek injunctive relief from acts of an employer "on grounds generally applicable to the class". Sex discrimination in employment is such a ground. See Donaldson v. Pillsbury Co., 554 F.2d 825 (8th Cir. 1977); Bowe v. Colgate-Palmolive Co.,416 F.2d 711 (7th Cir. 1969). That back pay may be a form of relief sought incidental to injunctive relief will not preclude certification under Rule 23(b)(2). Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.), cert. denied, 97 S.Ct. 182 (1976); Society for Individual Rights, Inc. v. Hampton, 528 F.2d 905, 906 (9th Cir. 1975); Rich v. Martin Marietta Corp., 522 F.2d 333, 341 (10th Cir. 1975); Jones v. Diamond, 519 F.2d 1090, 1100 (5th Cir. 1975); Nix v. Grand Lodge of Int'l Ass'n of Machinists, 479 F.2d 382, 385 (5th Cir.), cert. denied, 414 U.S. 1024, 94 S.Ct. 449, 38 L.Ed.2d 316 (1973); Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir.), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 720; Rodriguez v. Swank, 318 F.Supp. 289, 295 (N.D.Ill.1970), aff'd without opinion, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971). The District Court found that the fair representation requirement of Rule 23(a)(4) had been satisfied and we have held petitioner's mandamus challenge on that issue to be inadequate; hence there is no need to consider petitioner's argument that certification under Rule 23(b)(2) was inappropriate because of the presence of antagonism.
 
 B. Notice Requirements
 
 25
 Under a Rule 23(b)(2) certification the class members are not entitled to notice of the action and are not entitled to "opt out" of the action if they so choose, as they would be under a Rule 23(b)(3) certification.[11] See Rule 23(c)(2). Because of its concern that some members of the class who did not favor a suit against the union or were less than trustful of plaintiffs' ability to represent the common interests of the class against petitioner and the unions would be "locked in," the District Court ordered that an appropriate notice be given to all members of the class. Such notice would inform the class members not only of the pendency of the litigation, but also of possible back pay awards and the right of individual class members to intervene and participate directly in the suit. Petitioner charges that certification under Rule 23(b)(2), combined with the District Court's proposed notice, puts an onerous burden of intervention on unwilling members of the class and that the District Court will "potentially be fomenting litigation unfairly against the defendants." This, petitioner argues, is a usurpation of power warranting relief by mandamus. We reject this contention.
 
 
 26
 We think that petitioner misconceives the purpose of the District Court in directing that notice be given. Rule 23(d)(2) specifically authorizes the District Court to require "for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action(.)" The discretionary power to require notice in a Rule 23(b)(2) action thus serves as a "safety valve" which should be utilized "freely to protect the rights of the absentee members" to assure that a judgment in a Rule 23(b) (2) action will be "binding on all the class members." 7A C. Wright and A. Miller, Federal Practice and Procedure § 1786, at 144 (1972). See Sanders v. John Nuveen & Co., 463 F.2d 1075, 1082 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972). Far from usurping power, the District Court in this case acted to protect the interests of absentee members under a clear grant of discretionary power. We cannot read into this action a tacit recognition that it was done to alleviate a presently existing antagonism within the class with respect to the subject matter. It was rather a prudent safeguard against future antagonism which might affect the binding nature of a Rule 23(b)(2) judgment. Moreover, the District Court retains the power to decertify the class or create subclasses if subsequent events indicate the need to do so. See Donaldson v. Pillsbury Co., supra, 554 F.2d at 832, n. 6.
 
 III. Conclusion
 
 27
 We emphasize that petitioner's claims were reviewed here under the narrow standard applicable to a mandamus proceeding.[12] We do not say that the result would have been different under a 28 U.S.C. § 1292(b) interlocutory review, but it is clear that this case does not present the extraordinary situation for which mandamus is reserved. See In re Cessna Distributorship Antitrust Litigation, supra, 532 F.2d at 68; Stein v. Collinson, 499 F.2d 91, 95 (8th Cir. 1974); Gialde v. Time, Inc., 480 F.2d 1295, 1302 (8th Cir. 1973).
 
 
 28
 The petition for writ of mandamus is denied.
 
 
 
 [1]
 The Honorable Earl R. Larson, United States District Court for the District of Minnesota
 
 
 [2]
 This litigation began in December, 1974. In addition to their Title VII claims under 42 U.S.C. § 2000e et seq., plaintiffs Delores Elliott and Helen Ambrose asserted claims for violation of the Equal Pay Act of 1963, 29 U.S.C. § 206, and the Labor Management Relations Act, 29 U.S.C. § 157 et seq. They sought to represent a class consisting of women who were, are, might have become, or might become members of the International Brotherhood of Electrical Workers, AFL-CIO (IBEW) and Local 2047 and who were, are, might have become, or might become employees of Univac at its St. Paul plants since July 2, 1965, and who have been, are, or might be adversely affected by the practices of which they complained
 Petitioner filed a motion asking the District Court to determine, inter alia, the propriety of bringing this suit as a class action. After submission of memoranda and oral argument, the District Court issued a memorandum order on May 27, 1976. It denied certification to the claims under the Equal Pay Act and Labor Management Relations Act, but conditionally certified the Title VII action for class action status under Fed.R.Civ.P. 23(b)(2). It defined the class to include former, present and future female employees of Univac employed at its plants in and near St. Paul, Minnesota, who are, have been, or will be members of Local 2047 and IBEW during the period commencing July 2, 1965, and continuing to the date of trial.
 
 
 [3]
 At oral argument, counsel for petitioner explained that this Court appeared to be inhospitable to interlocutory appeals from class action determinations. Because we do not accept that evaluation, we add these additional comments
 The impact of a class action determination on the dimensions of the trial and the exposure to liability can be enormous. See Schmidt v. Fuller Brush Co., 527 F.2d 532, 535 (8th Cir. 1975). This fact of life must be balanced against general judicial policy disfavoring piecemeal litigation. See Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). When a close question of class action vel non is presented, either under the facts or under statutory construction, district courts ought to be more receptive to certifying critical questions for interlocutory review if it fairly appears that an immediate appeal may materially advance the ultimate termination of the litigation. It is a rare case in which a class action determination will qualify as a final order appealable under the collateral order doctrine. As a result, a party aggrieved by a class action determination and denied a section 1292(b) certification is relegated to seeking mandamus. This seriously narrows the scope of appellate review at a critical stage in the litigation and casts upon the district judge the uncomfortable role of a respondent, including the task of responding unless he chooses to rely upon the attorneys for the opposing party. We think that the legitimate objectives of class action litigation can best be served by our disclaiming any hostility toward interlocutory certifications in situations in which the district court should reasonably conclude that "the gravity of the class action certification issue require(s) an expedited hearing by this court." In re Cessna Aircraft Distributorship Antitrust Litigation, 518 F.2d 213, 216 (8th Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975). See, e. g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 169-72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286 (5th Cir. 1975); Katz v. Carte Blanche Corp., 496 F.2d 747 (3rd Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); Herbst v. International Tel. & Tel. Corp., 495 F.2d 1308, 1311-13 (2d Cir. 1974).
 
 
 [4]
 Fed.R.Civ.P. 23
 
 
 [5]
 The discriminatory practices and policies alleged by plaintiffs include, but are not limited to, the following:
 (a) failing and refusing to hire females on an equal basis with men at a rate of pay equal to that paid males;
 (b) establishing and maintaining job classifications which result in exclusion or limitation of females because of their sex from jobs and job opportunities for which they are otherwise qualified and for which sex is not a bona fide occupational qualification;
 (c) failing and refusing to provide training for females because of their sex for positions for which sex is not a bona fide occupational qualification;
 (d) failing and refusing to promote females because of their sex to positions for which sex is not a bona fide occupational qualification;
 (e) establishing and maintaining seniority systems which result in more frequent lay-off of females from jobs than males;
 (f) failing and refusing to pay females on an equal basis with men for substantially equal work;
 (g) using subjective bases for promotion which result in discrimination against females in promotion. These subjective bases include, but are not limited to, the use of subjective and discriminatory reports and opinions from supervisors, invalid tests, invalid job requirements, repeated failures to consider the seniority of females when all other criterion (sic) and factors are relatively equal between applicants for promotion, and subjective and discriminatory granting of on-the-job training in promotion;
 (h) failing and refusing to hire females for certain jobs, having females do jobs which are lower in pay, and by hiring females to do jobs which have fewer chances for promotion than jobs for which males are hired.
 
 
 [6]
 Rule 23(a) establishes these prerequisites to maintenance of a class action:
 (1) the class is so numerous that joinder of all members is impracticable,
 (2) there are questions of law or fact common to the class,
 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
 (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 [7]
 The issue of antagonism is occasionally considered in connection with Rule 23(a)(3)'s requirement of typicality. See, e. g., Windham v. American Brands, Inc., 68 F.R.D. 641, 649 (D.S.C.1975), rev'd on other grounds, 539 F.2d 1016 (4th Cir. 1976); Kinsey v. Legg, Mason & Co., 60 F.R.D. 91, 99 (D.D.C.1973); Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60, 63 (S.D.N.Y.1969). It will suffice for our purpose to consider this issue under Rule 23(a)(4), where it is clearly material
 
 
 [8]
 See Redmond v. Commerce Trust Co., 144 F.2d 140, 151-52 (8th Cir.), cert. denied, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944). See generally C. Wright and A. Miller, 7 Federal Practice and Procedure § 1768 (1972)
 
 
 [9]
 The District Court appropriately observed:
 Should genuine conflict arise in the future, the Court, being advised by counsel for the class, may remove any antagonism or, if necessary, decertify the class.
 
 
 [10]
 See note 6, supra
 
 
 [11]
 Under a Rule 23(b)(3) certification, the court must find that:
 the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
 
 
 [12]
 Thus circumscribed, we nonetheless express our concerns about the marginal nature of the class representatives in this case. We are confident that the experienced district judge will continue to monitor the performance of the class representatives and will take appropriate action if antagonisms going to the merits of the claim surface within the class. See note 9, supra