**ROBINSON RUBBER PRODUCTS CO., INC., Dean Akins; Patricia Schoenecker; and Brad Robinson, individually and on behalf of all other similarly situated, Plaintiffs,**

v.

**HENNEPIN COUNTY, MINNESOTA, Defendant.**

Civil No. 4–95–220.

United States District Court,
D. Minnesota,
Fourth Division.

June 3, 1996.

Steven J. Wells, Robert Edward Cattanach, Steven M. Christenson, Alexandra B. Klass, Dorsey & Whitney, Minneapolis, MN for plaintiffs.

Charles Nathan Nauen, Robert J. Schmit, William Allen Gengler, Schatz Paquin Lockridge Grindal & Holstein, Minneapolis, MN, Michael Orville Freeman, Toni A. Beitz, Hennepin County Attorney, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendant Hennepin County, Minnesota ("Hennepin County") to certify the court's order dated March 29, 1996, for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), to stay enforcement of certain aspects of the permanent injunction and to stay proceedings pending appeal. Plaintiffs oppose these motions.

### A. Interlocutory Appeal

■ By order dated March 29, 1996, the court conditionally certified a class of waste generators defined as follows:

All residential and commercial generators of mixed municipal solid waste in Hennepin County who directly paid for waste removal at any time during the period June 1, 1989 to the present.

An order certifying a class action is an interlocutory order not immediately appealable except by permission of the court pursuant 28 U.S.C. § 1292(b). To warrant section 1292(b) certification, an order must involve a controlling question of law as to which there is substantial grounds for difference of opinion and present circumstances suggesting that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); Fed.R.App.P. 5(a).

■ In support of its motion, Hennepin County argues that certifying a class of this size obviously presents a controlling question of law, that a substantial difference of opinion exists is evident by the differing positions of the parties and that appeal before significant time, energy and expense is expended will materially advance the termination of this litigation. Hennepin County also cites the court's comments at oral arguments in this matter regarding its preliminary decision to certify its order for interlocutory appeal.

Based on a review of the record and the submissions of the parties, the court denies defendant's request for section 1292(b) certification of its March 29, 1996 order. "The impact of a class action determination on the dimensions of the trial and the exposure to liability can be enormous." *Sperry Rand Corp. v. Larson*, 554 F.2d 868, 871 n. 3 (8th Cir.1977) (citing *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir.1975)). This fact notwithstanding, section 1292(b) requires more. There must exist a substantial legal debate as to the merits of the decision. Hennepin County does not point to any aspect of the court's order certifying a class which engenders such debate. This failure is fatal to defendant's motion. Instead, defendant relies heavily on two decisions granting interlocutory appeal. *Castano v. American Tobacco Company*, 162 F.R.D. 112 (E.D.La.1995) (tobacco)[1]; *Jenkins v. Raymark Industries, Inc.*, 109 F.R.D. 269 (E.D.Tex.1985) (asbestos). In determining that section 1292(b) certification was proper, both decisions relied heavily on the fact that a substantial difference of opinion existed regarding the propriety of the class action mechanism in mass tort cases. In contrast, this action involves the determination of economic injury where the issue of liability is common to all plaintiffs. The prerequisites of Rule 23(a) are not seriously disputed. The issue of predominance presents a closer question but plaintiffs have put forth a model detailing how damages common to the class can be ascertained. The class is manageable and clearly the most efficient manner to adjudicate plaintiffs' claims. An interlocutory

---

1. The Fifth Circuit recently reversed the order of Judge Jones certifying a class of "nicotine-dependent persons in the United States ... who have purchased and smoked cigarettes" since 1943.

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996). This opinion does not address the requirements of a § 1292(b) certification.

appeal at this stage of the litigation would not materially advance the termination of the case. Hennepin County's motion is denied.[2]

## B. Stay of Permanent Injunction

■ Pursuant to Federal Rules of Civil Procedure 62(c), the court may "suspend, modify, restore, or grant an injunction during the pendency of the appeal on terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." The court considers four factors in determining whether to grant a stay of an injunction pending appeal: (1) whether the applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the opposing party; and (4) the public interest. *In re Workers' Compensation Refund*, 851 F.Supp. 1399, 1401 (D.Minn.1994) (citing *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).

■ Hennepin County moves the court for a stay of the March 29, 1996, order which permanently enjoins enforcement of Ordinance 12. Hennepin County limits its request to that portion of the injunction which prevents Hennepin County from prohibiting disposal of Hennepin County waste at facilities in Minnesota other than the two designated facilities. Hennepin County also moves for an exception from the injunction for the non-flow control portions of Ordinance 12.

### 1. Success on the Merits

■ In considering this factor, the focus is not necessarily on whether the applicant has shown a likelihood that its appeal will be successful, although this is relevant, but whether the order involves the determination of substantial and novel legal questions. *In re Workers' Compensation Refund*, 851 F.Supp. at 1401. By orders dated March 28, 1996, and March 29, 1996, the court declared unconstitutional Ordinance 12, "a flow control ordinance which require[d] the delivery of 'designated waste' generated within Hennepin County 'to a Designated Facility and to the final destination point as directed by the County.'" *Oehrleins v. Hennepin County*, 867 F.Supp. 1430, 1432 (D.Minn.1994). The court addressed Ordinance 12 as written and as enforced after December 1993. There is no debate, although Hennepin County appears to persist with its position, surrounding the fact that Ordinance 12 as written is unconstitutional under *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).

For purposes of this motion, Hennepin County limits its comments to that portion of the court's order addressing the constitutionality of Ordinance 12 as enforced. As enforced, Ordinance 12 requires that waste generated in Hennepin County and destined for disposal in Minnesota be delivered to one of two designated facilities, with additional exceptions for certain instate processing facilities. The court held that, notwithstanding the facially intrastate nature of the regulation, Ordinance 12 discriminated against interstate commerce in effect by prohibiting the importation of waste processing services and with the purpose of benefiting its local, proprietary facilities.

In support of its motion to stay the injunction, Hennepin County argues that this holding comes at a time when the area of intrastate flow control of solid waste is "developing" and cites four decisions which have purportedly upheld intrastate flow control provisions. The court has previously considered and found unpersuasive the cases cited by Hennepin County. Moreover, Hennepin County's efforts to limit the injunction are indicative of its continued failure to recognize the impact on interstate commerce that intrastate designation effects. The example of plaintiffs' expert Dr. Markman, although flawed, illustrates this point.

Dr. Markman posits a waste facility opera-

---

**2.** One housekeeping note is appropriate. Currently pending before the court is plaintiffs' motion for approval of class notification procedures. Previously, the court asked defendant to respond to plaintiffs' motion by June 7, 1996. The court modifies this date, extending defendant's time to respond to June 21, 1996. Thereafter, that matter will be set down for a hearing.

tor[3] who is interested in locating in the Twin Cities area. Even with the out-of-state restriction lifted, this operator is nevertheless unable to process waste from Hennepin County, indisputably a major component of the local market. The effect of this inability, however, is not purely local. Because the hypothetical processor is denied access to this waste stream, it is less likely to be successful upon locating in the area, if this is feasible at all. The reason why this seemingly intrastate phenomenon implicates the Commerce Clause lies in the inherently interstate nature of the market for waste processing services. As the numerous cases relied upon by the parties and this court make abundantly clear, waste—when unfettered by local protectionist legislation—moves freely throughout the United States. It may be produced in one state, collected together with other waste in a second, shipped through any number of intermediary states and ultimately incinerated hundreds of miles from its origin. A restriction at any of these points chokes the free flow of commerce in violation of the Constitution. Such restriction is found where, as here, a major source of waste is legislatively deemed unavailable for participation in this market. By creating the market equivalent of a "black hole", Ordinance 12 as enforced impermissibly distorts the surrounding economic space. It thus discourages investment not only from the outside, but also those "domestic" investments which seek to attract, in addition to local waste, waste from other markets as well. In sum, there is no such thing as a truly intrastate designation ordinance. While the existence of interstate effect is not always fatal under the Commerce Clause, where the discriminatory, protectionist intent is so clearly evident, as here, the restriction is subject to strict scrutiny and ultimately under these facts is invalid. Thus, limiting the injunction to facilities built by out-of-

state concerns is unwarranted.[4] Having considered defendant's arguments, the court concludes that Hennepin County has failed to make a threshold showing that it may succeed on the merits of its appeal.

These facts aside and notwithstanding the fact that the court believes its decision to be firmly grounded upon Supreme Court precedent, the court realizes that its order is one of first impression within a very controversial area; a fact which suggests that it presents a novel and substantial question sufficient to weigh in favor of granting a stay of its permanent injunction.

### 2. Irreparable Harm

In support of its claim of irreparable injury, Hennepin County argues that without enforcement of Ordinance 12, "it is inevitable that some haulers will dispose of unprocessed waste in in-state landfills. Disposal of unprocessed waste in in-state landfills is antithetical to Minnesota legislative policy and state law, and is presumptively harmful to the environment enjoyed by citizens of Hennepin County." Def's Mem. at 9. Hennepin County does not explain, however, how this is possible much less "inevitable" in light of an unchallenged Minnesota statute that prohibits the landfilling of unprocessed metropolitan waste in Minnesota. Minn.Stat. § 473.848 (1994). Hennepin County has identified no other harm. Without irreparable injury, a stay is not warranted.

### 3. Injury to Plaintiffs

Plaintiffs assert they will be harmed by a stay of the injunction, and the court agrees. Hennepin County's argument that plaintiffs will not be harmed is premised on its limited view of the burden on the interstate market and is therefore unpersuasive. Consideration of this factor weighs against granting a stay.

---

**3.** Dr. Markman specifically refers to a landfill operator, however, landfill operators cannot directly receive unprocessed waste from Hennepin County. Minn.Stat. § 473.848 (1994). Local landfills may receive processed waste from Hennepin County. With this caveat in mind, Dr. Markman's example is a useful illustration.

**4.** Further, the unworkability of such a limitation is evident by Hennepin County's own observation that several of the waste processor plaintiffs have been purchased by out-of-state concerns. Hennepin County offers no suggestions regarding whether these newly-purchased facilities should be considered as having been built by out-of-state concerns for purposes of its request for a partial stay.

#### 4. Public Interest

The court must weigh the interests of the public. Hennepin County argues that the public interest favors the "enforcement of Ordinance 12's prohibition of in-state landfilling of unprocessed solid waste." As noted, however, enjoining Ordinance 12 will not lead to the landfilling of unprocessed metropolitan waste in light of Minn.Stat. § 473.848. On the other hand, the public interest favors the enforcement of the United States Constitution. This factor weighs against a stay. Hennepin County has failed to demonstrate any irreparable harm, a fact which alone counsels against a stay of the injunction. Balancing the factors does not shift the court towards granting the relief which Hennepin County requests. The court denies Hennepin County's motion for a stay of the injunction entered on March 29, 1996.

Hennepin County does raise an important issue and that is the administrative provisions of Ordinance 12 which it cannot enforce in light of the court's broadly worded injunction. Plaintiffs agree that a limited modification of the injunctions may be appropriate but argue that this does not warrant a stay of the injunction. The court agrees. The court will entertain a motion, based on the stipulation of the parties or otherwise, to amend its injunctions to allow Hennepin County to enforce certain administrative aspects of Ordinance 12 which do not implicate the dormant Commerce Clause.

#### C. Stay of Proceedings

■■ The court has the inherent power to stay proceedings pending appeal. Hennepin County's request is denied. Hennepin County identifies no reason to stay these proceedings nor does the court see any efficiency in such a decision.

Accordingly, based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to certify the court's order dated March 29, 1996, for interlocutory appeal is denied;

2. Defendant's motion to stay enforcement of the permanent injunction is denied. The court will entertain a motion to modify its order to allow enforcement of the admin-istrative aspects of Ordinance 12 which do not offend the dormant Commerce Clause; and

3. Defendant's motion to stay further proceedings is denied.